UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PATRICIA K. KUNKLE, | : | Case No. 3:13-cv-82 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| Q-MARK, INC., et al., | : | |
| Defendants. | : | |

### DECISION AND ENTRY DENYING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (Doc. 4)

This case is before the Court on Defendants' Motion for Partial Judgment on the Pleadings. (Doc. 4). Plaintiff filed a Memorandum in Opposition to Defendants' Motion. (Doc. 6). Thereafter, Defendants filed a Reply in Support of their Motion. (Doc. 8). Defendants' Motion is now ripe for decision.

### I. FACTUAL ALLEGATIONS

The standard for determining a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is the same as that for determining a Rule 12(b)(6) motion to dismiss. *Lindsay v. Yates*, 498 F.3d 434, 437 n5 (6th Cir. 2007). As a result, this Court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). In addition, a court must construe all allegations in the light most favorable to the plaintiff. *Bower v. Fed. Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).

In April 2012, Plaintiff began working for Defendant Q-Mark, Inc. ("Q-Mark") through a temporary employment agency. Q-Mark hired Plaintiff directly in May of 2012. Plaintiff alleges that, before the 2012 presidential election, Defendant Roberta Gentile

threatened Q-Mark employees with termination if President Obama was re-elected. Plaintiff also claims that Gentile informed Q-Mark employees that Obama supporters would be the first employees terminated if President Obama was re-elected.

According to Plaintiff, Gentile "engaged Q-Mark employees, including Kunkle, in conversation aimed at discovering the employees' political affiliations." Plaintiff also alleges that Gentile created a hostile working environment by disparaging Obama supporters.

Plaintiff alleges that the day after the election she "stated at work that she had voted a 'straight democratic (sic) ticket.'" Plaintiff also claims that Gentile either knew or believed that she voted for Obama and, on November 9, 2012 Defendants terminated Plaintiff's employment with Q-Mark for that reason.

## II. STANDARD OF REVIEW

Defendants move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). The standard for reviewing a Rule 12(c) motion is the same standard employed for reviewing a Rule 12(b)(6) motion to dismiss. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). In determining "a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Streater v. Cox*, 336 Fed. Appx. 470, 474 (6th Cir. 2009) (citing *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir.2008)).

## III. ANALYSIS

Defendants argue that Plaintiff's claims alleging wrongful discharge in violation of public policy under Ohio law must be dismissed as a matter of law. Ohio law recognizes and

generally follows "the common-law employment-at-will doctrine[.]" *Painter v. Graley*, 70 Ohio St.3d 377, 382 (Ohio 1994); *see also Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 171 (Ohio 2011). Ohio courts also recognize an exception to the employment-at-will doctrine in circumstances where "an employee is discharged or disciplined in contravention of a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, administrative rules and regulations, or common law[.]" *Dohme*, 130 Ohio St.3d at 171. Termination in contravention of a clear public policy gives rise to a right of action in tort commonly known as "wrongful discharge in violation of public policy[.]" *Id.*; *see also Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228 (Ohio 1990).

"[T]o state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating that the employer's act of discharging him [or her] contravened a 'clear public policy.'" *Painter*, 70 Ohio St.3d at 383. To prevail on such a cause of action, the proponent must prove:

> "1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
>
> "2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
>
> "3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
>
> "4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element)."

*Id*. at 384 n 8 (citation omitted); *see also Dohme*, 130 Ohio St.3d at 171; *Leininger v. Pioneer Nat'l Latex*, 115 Ohio St.3d 311 (Ohio 2007). In this case, Defendants challenge the existence of the clarity and jeopardy elements.

Clarity

With regard to the clarity element, Plaintiff contends that Ohio maintains a clear public policy prohibiting employers from threatening or intimidating employees to vote for particular candidates. Plaintiff relies mainly on an Ohio statutory provision stating that:

> No employer, his officer or agent, shall discharge or threaten to discharge an elector for taking a reasonable amount of time to vote on election day; or require or order an elector to accompany him to a voting place upon such day; or refuse to permit such elector to serve as an election official on any registration or election day; or indirectly use any force or restraint or threaten to inflict any injury, harm, or loss; or in any other manner practice intimidation in order to induce or compel such person to vote or refrain from voting for or against any person or question or issue submitted to the voters.

Ohio Rev. Code § 3599.06. Plaintiff's Complaint also cites Ohio Rev. Code § 3599.01[1] and Ohio Rev. Code § 3599.05.[2]

---

[1] Ohio Rev. Code § 3599.01(A)(2) prohibits persons from attempting "by intimidation, coercion, or other unlawful means to induce such delegate or elector to register or refrain from registering or to vote or refrain from voting at a primary, convention, or election for a particular person, question, or issue[.]" Persons violating Ohio Rev. Code § 3599.01(A)(2) are "guilty of bribery, a felony of the fourth degree[.]"

[2] Ohio Rev. Code § 3599.05 is "a statute prohibiting an employer from influencing the political opinion or vote of an employee." *Seger v. Anthony*, No. 17-84-9, 1985 WL 7231, *1 (Ohio App. Oct. 29, 1985). The statute states that "[n]o employer or his agent or a corporation shall print or authorize to be printed upon any pay envelopes any statements intended or calculated to influence the political action of his or its employees; or post or exhibit in the establishment or anywhere in or about the establishment any posters, placards, or hand bills containing any threat, notice, or information that if any particular candidate is elected or defeated work in the establishment will cease in whole or in part, or other threats expressed or implied, intended to influence the political opinions or votes of his or its employees." Ohio Rev. Code § 3599.05. An employer violating Ohio Rev. Code § 3599.05 "is guilty of corrupt practices, and shall be punished by a fine of not less than five hundred nor more than one thousand dollars." *Id.*

In addition to Ohio statutes, "[t]he existence of such a public policy may be discerned by the Ohio judiciary based on sources such as the Constitutions of Ohio and the United States, legislation, administrative rules and regulations, and the common law." *Painter*, 70 Ohio St.3d at 384. To that end, in not limiting the expression of clear public policy to simply Ohio law, Plaintiff also points to 18 U.S.C. § 594, which states that:

> Whoever intimidates, threatens, coerces, or attempts to intimidate, threaten, or coerce, any other person for the purpose of interfering with the right of such other person to vote or to vote as he may choose, or of causing such other person to vote for, or not to vote for, any candidate for the office of President, Vice President, Presidential elector, Member of the Senate, Member of the House of Representatives, Delegate from the District of Columbia, or Resident Commissioner, at any election held solely or in part for the purpose of electing such candidate, shall be fined under this title or imprisoned not more than one year, or both.

All of these statutes clearly set forth public policy against persons threatening or intimidating others in an effort to compel their vote for a particular political candidate. *See Seger v. Anthony*, Case No. 17-84-9, 1985 WL 7231, *1 (Ohio App. Oct. 29, 1985) (stating that Ohio Rev. Code § 3599.05 is "a statute prohibiting an employer from influencing the political opinion or vote of an employee").

Defendants argue that Ohio Rev. Code § 3599.06 only touches upon pre-election conduct, and by its explicit terms, does not expressly prohibit an employer from terminating employees based on that employee's vote. The Court finds Defendant's argument unpersuasive. Even insofar as the statute may not expressly criminalize discharging employees because they did not succumb to the employer's threats of discharge and intimidation to vote for a particular candidate or issue does not mean that Ohio has failed to sufficiently express public policy against such conduct by enacting Ohio Rev. Code

§§ 3599.01, 3599.05 and 3599.06. *See Contreras v. Ferro Corp.*, 73 Ohio St.3d 244, 253 (Ohio 1995) (stating that "to state a claim of wrongful discharge in violation of public policy, a plaintiff is not limited to having to prove the violation of a specific statute"); *see also Painter*, 70 Ohio St.3d at 384 (holding that "an exception to the employment-at-will doctrine is justified where an employer has discharged his employee in contravention of a 'sufficiently clear public policy[,]'" such as where "where the public policy alleged to have been violated is of equally serious import as the violation of a statute").

In order to more fully effectuate the public policy clearly set forth in Ohio Rev. Code §§ 3599.01, 3599.05 and 3599.06, *i.e.*, prohibiting threats and intimidation of voters in an effort to influence their vote, an employer's common-law right to discharge employees at-will must be limited to prevent circumstances where an employee is terminated based upon the employee's refusal to vote as the employer *demands* via threats or intimidation. Accordingly, the Court concludes that the averments in the Complaint allege a violation of clear Ohio public policy.

### Jeopardy

Next, Defendants argue that the jeopardy element is not satisfied because Ohio Rev. Code §§ 3599.01, 3599.05 and 3599.06 provide sufficient penalties for violations of those sections to protect the public interest involved. The jeopardy element requires that Plaintiff "prove . . . that without a common-law tort claim for wrongful discharge based" on an employer terminating an employee for refusing to vote as an employer demands, the public policy set forth in Ohio Rev. Code §§ 3599.01, 3599.05 and 3599.06 "would be compromised." *Leininger*, 115 Ohio St.3d at 315.

"It is clear that when a statutory scheme contains a full array of remedies, the underlying public policy will not be jeopardized if a common-law claim for wrongful discharge is not recognized based on that policy." *Id*. at 316. In other words, "it is unnecessary to recognize a common-law claim when remedy provisions are an essential part of the statutes upon which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct." *Id*. at 317; *see also Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 244 (Ohio 2002) (stating that "[s]imply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests").

Defendants contend that the policy set forth in Ohio Rev. Code §§ 3599.01, 3599.05 and 3599.06 would not be compromised in the absence of a wrongful discharge claim because violations of those statutes are punishable by criminal fines and imprisonment. Defendants, however, point to no available private remedies provided by these statutes, though Defendants suggest that the threat of criminal punishment and fines can be sufficient to adequately protect the public policy interest involved without the need to recognize a wrongful discharge tort. To support this contention, Defendants cite two Ohio appellate court opinions, *Jurczak v. J&R Schugel Trucking Co.*, No. 03AP-451, 2003 WL 22999504 (Ohio App. Dec. 23, 2003) and *Ripley v. Montgomery*, No. 07AP-6, 2007 WL 4564572 (Ohio App. Dec. 31, 2007).

The Court finds the cases of *Jurczak* and *Ripley* unpersuasive. The Supreme Court of Ohio, in generally tracing the history of the "public policy exception to the employment-at-will doctrine[,]" noted that, while employers may be deterred from engaging in criminal

7

conduct simply because of "[t]he threat of criminal prosecution[,]" the public policy exception to the employment-at-will doctrine exists because, "in order to more fully effectuate the state's declared policy . . . the civil law, too, must deny the employer his generally unlimited right to discharge an employee whose employment is for an unspecified duration" for reasons violative of the state's public policy. *Collins v. Rizkana*, 73 Ohio St.3d 65, 68 (Ohio 1995) (citing *Petermann v. Int'l. Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, Local 396, 174 Cal.App.2d 184 (Cal. App. 1959)).

Here, Defendants have not directed this Court to any applicable civil remedy adequately protecting the clear public policy set forth in these statutes. Accordingly, the Court finds no merit to Defendants' arguments in this regard and concludes that Plaintiff's claims sufficiently satisfies the jeopardy element.

## Individual Liability

Finally, Defendants argue that claims against Roberta Gentile in her individual capacity must be dismissed because the tort of wrongful discharge in violation of public policy cannot be asserted against a supervisor in the supervisor's individual capacity. One court in this district declined liability for wrongful discharge in violation of public policy claims to persons in their individual capacities. *Arthur v. Armco, Inc.*, 122 F.Supp.2d 876, 880 (S.D. Ohio 2000). In that case, the court noted that "the caselaw recognizing common law claims for wrongful discharge in violation of public policy speaks solely in terms of the liability of an 'employer.'" *Id*.

Since the decision in *Arthur*, at least one Ohio state court recognized the availability of individual supervisor liability in wrongful discharge claims in certain circumstances.

*Armstrong v. Trans-Serv. Logistics*, No. 04CA15, 2005 WL 1301691, *9-10 (Ohio App. May 27, 2005). A court in the Northern District of Ohio, citing *Armstrong*, 2005 WL 1301691, also recognized the "colorable" possibility of individual liability with regard to claims of wrongful discharge in violation of public policy. *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027, *4-5 (N.D. Ohio Jan. 29, 2010) (stating that "Ohio courts have already held that individual liability may exist in claims for wrongful termination in violation of Ohio's public policy in favor of workplace safety").

As noted by the Sixth Circuit, "[w]here a state appellate court has resolved an issue to which the high court has not spoken, 'we will normally treat [such] decisions . . . as authoritative absent a strong showing that the state's highest court would decide the issue differently.'" *Swix v. Daisy Mfg. Co., Inc.*, 373 F.3d 678, 681 (6th Cir. 2004) (alterations in original) (citations omitted). A decision of a state's intermediate appellate court, "while lacking the controlling force of a decision of a state court of last resort, does serve as 'a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997) (quoting *Ziebart Int'l Corp. v. CNA Ins. Cos.*, 78 F.3d 245 (6th Cir. 1996)). Other persuasive authority courts can consider in determining whether a state's high court would disagree with a conclusion of an intermediate court "include the state's supreme court dicta, restatements of law, law review commentaries, and the majority rule among other states." *Id*. (citation omitted).

This Court's review of law in other jurisdictions reveals that a most courts recently considering the issue recognize claims against individual employees, such as supervisors,

who violate public policy by participating in wrongful termination of an employee. *Vanburen v. Grubb*, Nos. 10-2100, 10-2161, 2013 WL 1150486 (4th Cir. Mar. 21, 2013) (relying on Virginia state law); *Van Buren v. Grubb*, 284 Va. 584 (Va. 2012) (concluding that "that Virginia recognizes a common law tort claim of wrongful discharge in violation of established public policy against an individual who was not the plaintiff's actual employer but who was the actor in violation of public policy and who participated in the wrongful firing of the plaintiff, such as a supervisor or manager"); *Myers v. Alutiiq Int'l Solutions, LLC*, 811 F.Supp.2d 261, 269 (D.D.C. 2011) (allowing "claims against individual supervisors for wrongful discharge if it [is] shown that their conduct was sufficiently wrongful and violative of an important public policy"); *Ballinger v. Delaware River Port Auth.*, 172 N.J. 586, 608 (N.J. 2002) (concluding that "an individual who personally participates in the tort of wrongful discharge may be held individually liable" under both New Jersey and Pennsylvania state law); *Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 777 (Iowa 2009) (holding that a wrongful discharge "tort can extend to individual officers of a corporation who authorized or directed the discharge of an employee for reasons that contravene public policy").[3]

---

[3] Other courts have not recognized claims of wrongful discharge in violation of public policy against individual supervisors. *See Johnson v. Lone Wolf Wireline, Inc.*, No. 2:12CV1087, 2013 WL 1899920, *4-5 (D. Utah May 7, 2013) (citing Utah law); *Buckner v. Atl. Plant Maint.*, 182 Ill.2d 12, 21 (Ill. 1998) (reasoning that "only 'the employer' has the power to hire or fire an employee" and, while "an agent or employee of the employer may carry out that function on the employer's behalf, but it is still the authority of the employer which is being exercised[;]" thus, "[i]f the discharge violated public policy, it is the employer who is rightly held liable for damages"); *Cox v. Indian Head Indus.*, 187 F.R.D. 531, 536 (W.D.N.C. 1999) (holding that "North Carolina does not recognize a claim against a supervisor in an individual capacity for wrongful discharge in violation of public policy").

In this case, finding that at least one intermediate Ohio appellate decision recognizes the availability of individual supervisor liability for wrongful discharge claims in certain circumstances, and absent a strong showing that the Supreme Court of Ohio would decide the issue differently, the Court denies Defendants' Motion for Partial Judgment on the Pleadings with regard the claims against Roberta Gentile as an individual.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendants' Motion for Partial Judgment on the Pleadings.

**IT IS SO ORDERED.**


Date:  6/28/13                                             *s/ Timothy S. Black*
                                                           Timothy S. Black
                                                           United States District Judge